IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MILTON J. MIRE,                                              Plaintiff

v.                      Case No. 09-3051

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,                                     Defendant

## MEMORANDUM OPINION

Plaintiff Milton Mire("Plaintiff") seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act. Plaintiff has exhausted all of his administrative remedies, and therefore, pursuant to 42 U.S.C. § 405(g), judicial review is now appropriate. After reviewing the record, the Court hereby AFFIRMS the decision of the Commissioner.

### I.   Background

Plaintiff is a fifty-seven year old male.[1] He contends he has been disabled since September 22, 2006, due to a soft tissue injury of his dominant (left) arm, causing him constant numbness and periodic pain in that arm, which is exacerbated when lifting more

---

[1] While the hearing transcript indicates that Mr. Mire testified to having been born in 1952, the record consistently indicates elsewhere that Mr. Mire was born in 1953. Mr. Mire is, thus, assumed to have been born on May 19, 1953.

than minimal weight. The Plaintiff also states in his application for benefits that he is limited, as well, by back pain and diabetes. However, the medical evidence of record gives no indication that Plaintiff's treatment for diabetes has been unsuccessful or that he has received any treatment for back pain from his healthcare providers. Thus, this opinion will focus on Plaintiff's complaints concerning his left arm.

  As a result of Plaintiff being injured on the job on May 9, 2006 when a 75 pound door fell on his left arm, his employer sent him to a doctor, where he was treated and released. The doctor's report allowed for Plaintiff to return to work with a sling on his left arm. (Tr. 189). When Plaintiff continued to experience pain, his employer sent him to Doctor Charles D. Varela. Although Dr. Varela noted that Plaintiff had mild tenderness and some palpable nodules on his left arm, he found that Plaintiff had a good range of motion and normal strength. (Tr. 182). Dr. Varela released Plaintiff to normal work duty on May 31, 2006. *Id*. After follow-up appointments Plaintiff was released without restriction to full activities, although the doctor did note that on Plaintiff's last visit in September of 2006 he was not yet able to fully extend the elbow. (Tr. 184). On August 16, 2007, Plaintiff was examined, at the request of the Social Security Administration's Disability Determination Services, by Dr. Hassan Najeeb Albataineh. Dr. Albataineh diagnosed Plaintiff with trauma induced left arm pain,

back pain, and diabetes, but noted only mild limitations in Plaintiff's ability to walk, lift, carry, handle, and finger. (Tr. 221). In 2008, Plaintiff began seeing Dr. Michael Moore. Dr. Moore noted that Plaintiff was experiencing pain and numbness in his left forearm which was aggravated by gripping or lifting. (Tr. 242). A battery of tests performed during a couple of follow-up visits revealed some evidence of asymptomatic left carpal tunnel syndrome, but Dr. Moore ultimately concluded that, although he believed Plaintiff to be a legitimate patient, the physical examinations could not help him determine the cause of Plaintiff's persistent pain. (Tr. 232).

Vocational consultant, Dale Thomas, was present at Plaintiff's hearing, and Plaintiff had no objection to his participation. Mr. Thomas expressed his opinion, based on a hypothetical of a 53 year old male with twelve years of education and Plaintiff's work history, that such a person could occasionally lift/carry twenty pounds and frequently ten pounds. (Tr. 179). Mr. Thomas further opined that Plaintiff can sit for six hours and can stand or walk for six hours and can frequently handle and finger. *Id*. Based on those determinations, Mr. Thomas found that Plaintiff could return to his past work as a police dispatcher, but would be unable to return to being a crusher operator. (Tr. 180).

Plaintiff has testified that, while the numbness in his left arm is continual, he averages about two hours of periodic pain

going from the elbow of his left arm to the shoulder per day, which is exacerbated when lifting anything other than lightweight objects. (Tr. 13-16). Plaintiff also testified that his arm has not hindered him in his ability to care for himself on a daily basis, nor has it prevented him from going grocery shopping or volunteering doing traffic control at the fire department. (Tr. 15-16). The injury has, however, prevented him from engaging in certain activities he used to enjoy, such as golfing, hunting, and fishing. (Tr. 13). While Plaintiff testified that all the jobs he has held in his past 15 years of working have required him to lift in excess of 25 to 50 pounds, Plaintiff also testified to the fact that he had a high school diploma and that he had previously worked as a police dispatcher for nine years. (Tr. 18, 25). Plaintiff further stated that he felt he could perform that job again, as he had performed it in the past. (Tr. 25). Plaintiff conceded that the pain he felt in his left arm went away if he took Tylenol or something for the pain. (Tr. 19). Finally, Plaintiff admitted to receiving unemployment benefits subsequent to the onset date of his alleged disability, after receiving a somewhat cryptic call from a company claiming they could help the Plaintiff out. (Tr. 20-22).

## II.  Standard of Review

The Court's review is limited, under 42 U.S.C. § 405(g), to determining whether the Commissioner applied the correct standard of law and whether the Commissioner's findings of fact are

supported by substantial evidence on the record as a whole. *See Prosch v. Apfel,* 201 F.3d 1010, 1012 (8th Cir. 2000); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court may not reverse a prior determination based only on a finding that substantial evidence would support an opposite decision. *See Prosch*, 201 F.3d at 1012; *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996). This is true even if the Court might have weighed the evidence differently and reached a different result if a de novo review were applied. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

To receive disability benefits a claimant must show: (1) a medically determinable physical or mental impairment that has lasted, or can be expected to last, for not less than twelve months; (2) an inability to engage in any substantial gainful activity; and (3) the inability results from the impairment. *See* 42 U.S.C. §§ 423 (d)(1)(A), (d)(2); *see also Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975). The Court reviews the ALJ's decision to determine whether the ALJ followed the Commissioner's implementing regulations, which set out a five-step, burden-shifting process for determining whether the claimant has a "disability" within the meaning of the Social Security Act.

The five steps are (1) whether the claimant is currently engaging in "substantial gainful activity;" (2) whether the

claimant is severely impaired; (3) whether the severe impairment is, or is comparable to, a listed impairment precluding substantial gainful activity as a matter of law; (4) whether the claimant has the Residual Functional Capacity ("RFC") to meet the demands of his past work, and if not; (5) whether the claimant retains the capacity, considering his age, education, and work experience, to perform any other work that exists in significant numbers in the economy. *See* 20 C.F.R. §§ 404.1520(a)-(g)(2009); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (discussing the five-step analysis). In the first four steps, the burden is on the claimant to prove that he or she is disabled. In this case, the ALJ made a determination at step four, at which point the burden remains on Plaintiff to prove that he cannot perform his past relevant work. *Bowen*, 482 U.S. at 146 n.5.

### III. Analysis

The ALJ in this case found Plaintiff was not disabled and had the residual functional capacity (RFC) to perform his past relevant work as a police dispatcher. Plaintiff alleges three points of error by the ALJ. First, Plaintiff alleges that the ALJ improperly based his denial of benefits on the fact that Plaintiff had received unemployment benefits subsequent to the alleged onset date of the disability. Second, Plaintiff alleges that the ALJ was barred from terminating benefits to Plaintiff by administrative res judicata. Third, Plaintiff alleges that the decision of the ALJ was simply not supported by substantial evidence.

6

CONSIDERATION OF UNEMPLOYMENT BENEFITS

Plaintiff contends that the ALJ committed error by finding Plaintiff to not be disabled based on evidence that he received unemployment benefits. While the ALJ did make note of Plaintiff's receipt of unemployment benefits, the fact that Plaintiff received those benefits did not comprise the basis for the decision the ALJ ultimately reached. Instead, the ALJ, in appropriately applying the five-factor evaluation process set out in the Commissioner's regulations, determined that Plaintiff retained the RFC to perform his past work as a police dispatcher.

Plaintiff cites precedent showing that acceptance of unemployment benefits can not be used as conclusive evidence to show an ability to work. The ALJ did not use Plaintiff's acceptance of unemployment benefits as evidence that he could work during the time in question. Instead, the ALJ commented that the acceptance of unemployment benefits made Plaintiff's allegation of disability less credible. While receipt of unemployment benefits, alone, is not sufficient to make a determination of claimant's credibility, *see Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998), there is no reason why it cannot be mentioned as one consideration among many. The ALJ's isolated comment that Plaintiff's receipt of unemployment benefits makes Plaintiff's allegation of disability less persuasive does not constitute error.

ADMINISTRATIVE RES JUDICATA

Plaintiff alleges that the ALJ was barred from terminating benefits to Plaintiff by administrative res judicata. Plaintiff

expounds at length as to when and how res judicata can and should be applied in social security cases. Plaintiff then contends that when he originally applied for Social Security benefits, he was adjudged to be totally and permanently disabled and unable to engage in any gainful employment. The Plaintiff, however, fails to cite to any information in the record that would establish that Plaintiff had, at any point, been adjudged to be disabled by the Social Security Administration. A review of the record has failed to enlighten the Court any further on this point. The record shows that Plaintiff's claim was denied both initially on June 21, 2007 and again upon reconsideration on August 23, 2007. Since the Court is unable to find facts in the record sufficient to support this contention by Plaintiff, the Court sees no reason to address any legal issues that would otherwise be implicated in a case involving the possibility of administrative res judicata.

SUBSTANTIAL EVIDENCE

Plaintiff alleges the decision of the ALJ was simply not supported by substantial evidence. Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, the threshold imposed by the substantial evidence standard is relatively low. While the Court does not take lightly its duty to review the record, the Court is not reviewing this case de novo, nor can it impose its own judgment for that of the ALJ. In any case, the only specific allegation made by Plaintiff, in

8

arguing that there was no substantial evidence to support the ALJ's finding, is that the ALJ committed error in his use of "vocational expert testimony and medical examiner at the hearing when the examiner is told not to give any weight to the treating physician's opinions." (Pl. Br. at 12) However, Plaintiff made no objections to the vocational expert's testimony at the time of the hearing, nor was any medical examiner present at the hearing. Furthermore, the ALJ's opinion gave significant weight to the findings of Dr. Moore, Plaintiff's primary treating physician.

The ALJ considered a variety of factors in reaching his conclusion, going beyond the testimony provided by the vocational expert at the hearing. Based on the opinion of several of Plaintiff's treating physicians, Plaintiff's own testimony, testimony by the vocational expert, and other evidence in the record, the ALJ found that Plaintiff had the residual functional capacity to perform light work. Specifically, the ALJ found that Plaintiff can lift or carry ten pounds frequently and twenty pounds occasionally; sit, stand, and walk for six hours of an eight-hour day; and frequently handle and finger. Plaintiff, himself, represented that he had past work experience as a police dispatcher and that he felt capable to perform that job as he had previously performed it for 9-10 years. (Tr. 25).

This finding was also consistent with the physicians' opinions of Plaintiff's abilities and the opinion of the vocational expert. After seeing Plaintiff over the course of several months after his injury, Dr. Varela ultimately released Plaintiff without

9

restrictions. (Tr. 184). Dr. Albataineh noted only mild limitations in Plaintiff's ability to walk, lift, carry, handle, and finger. (Tr. 221). And Dr. Moore, Plaintiff's primary treating physician starting in 2008, ultimately concluded that, although he believed Plaintiff to be a legitimate patient, the physical examinations could not help him determine the cause of Plaintiff's persistent pain. (Tr. 232). The ALJ found that Plaintiff could occasionally lift or carry twenty pounds and frequently ten pounds and that he had the ability to sit, stand, or walk for six hours and to frequently handle and finger. (Tr. 179). Dale Thomas, the vocational expert, opined that Plaintiff would be able to perform his previous job as a police dispatcher, given this RFC. (Tr. 180). *See Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by ALJ). Furthermore, Plaintiff himself testified that, even when lifting, the pain in his arm would subside if he took Tylenol. (Tr. 19). *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability).

    The ALJ considered the record as a whole, reducing Plaintiff's residual functional capacity to reflect Plaintiff's allegations of pain, in reaching the conclusion that Plaintiff is able to perform his past work as a police dispatcher, a sedentary job. The Commissioner will find Plaintiff not disabled if he can perform the actual functional demand of his past relevant work, or as it is

10

generally performed in the national economy. *See Evans v. Shalala*, 21 F.3d 832, 833-834 (8th Cir. 1994). The Court finds that the ALJ's conclusion is supported by substantial evidence contained in the record.

### IV. CONCLUSION

For the foregoing reasons, the decision of the ALJ is supported by the substantial evidence of the record as a whole and is **AFFIRMED**. Plaintiff's case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

DATE:    September 9, 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE